# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **RIZVAN MIRZA** <br> 275 E. Green St., Apt. 1538 <br> Pasadena, CA 91101 <br><br> and <br><br> **JMP AZ, LLC** <br> 1717 E. Morten Ave, Unit 1 <br> Phoenix, AZ 85020 <br><br> Plaintiffs, <br><br> v. <br><br> **TABATABAI INVESTMENT PARTNERS LP** <br> c/o Agent of Service: Derek Bork, ESQ. <br> Thompson Hine LLP <br> 127 Public Square, 3900 Key Center <br> Cleveland, OH 44114 <br><br> and <br><br> **TABATABAI INVESTMENT MANAGEMENT, LLC,** <br> c/o Agent of Service: Derek Bork, ESQ. <br> Thompson Hine LLP <br> 127 Public Square, 3900 Key Center <br> Cleveland, OH 44114 <br><br> and <br><br> **ALIREZA TABATABAI,** *a.k.a.* **ALEX TABATABAI** <br> 840 Zermatt Dr. <br> Hummelstown, PA 17036-9706 <br><br> Defendants. | **CASE NO.:** <br><br> **JUDGE:** <br><br><br> **COMPLAINT AND REQUEST FOR JURY DEMAND** |

1

{01674095-10}

**NATURE OF CASE**

1. Plaintiffs are limited partners of, and invested over $260,000.00 in, Defendant Tabatabai Investment Partners LP ("TIP"), which purported to serve as a hedge fund. This case centers on Defendants Tabatabai Investment Management, LLC's ("TIM") and Alex Tabatabai's ("Tabatabai") breach of their fiduciary duties to Plaintiffs via their misappropriation and misuse of Plaintiffs' investment and TIP's failure to abide by the terms of the parties' Limited Partnership Agreement.

**PARTIES**

2. Plaintiff Rizvan Mirza ("Mirza") is a medical doctor who resides at 275 E. Green St., Apt 1538, Pasadena, California 91101. Mirza is a limited partner of Defendant TIP.

3. Plaintiff JMP AZ, LLC ("JMP") is an Arizona limited liability company, with a principal address of 1717 E. Morten Ave, Unit 1, Phoenix, Arizona 85020. Its registration is current with the State of Arizona. Like Mirza, JMP is a limited partner of Defendant TIP.

4. Defendant Tabatabai Investment Partners LP started life as Arosa Investment Partners LP ("Arosa"), which was formed as a Delaware limited partnership on October 29, 2014. Arosa changed its name to Tabatabai Investment Partners LP ("TIP") on or about February 3, 2016, following Tabatabai's discovery that the name "Arosa" had already been taken by another entity. Tabatabai Investment Partners LP maintains a mailing address at 540 N. Dearborn St., Unit 101257, Chicago, IL 60610.

5. Defendant Tabatabai Investment Management LLC ("TIM") is the general partner of TIP. TIM is a Delaware limited liability company which maintains an office

at 540 N. Dearborn St., #101257, Chicago, IL 60610.  TIM also maintains an office at 5900 Landerbrook Drive, Suite 170, Mayfield Heights, OH 44124.

6. Upon information and belief, Plaintiffs allege that Defendant Alireza Tabatabai, aka Alex Tabatabai ("Tabatabai") maintains a residence at 540 N. Dearborn St., Unit 101257 Chicago, IL 60610.  Tabatabai is the managing member of TIM.

## JURISDICTION AND VENUE

7. This court maintains subject-matter jurisdiction pursuant to 28 U.S.C.A. §1332 insofar as there is complete diversity among the parties and the amount in dispute is in excess of $75,000.

8. Venue is properly before this Court insofar as:

a. The within dispute, as described below, arises out of TIM's failure to abide by its fiduciary duties, causing TIP to breach its contract with Plaintiffs;

b. TIM's conduct relevant to the within dispute took place within Cuyahoga County, Ohio;

c. TIM, which serves as TIP's general partner, maintains an office in Mayfield Heights, Ohio;

d. The principal holding of TIP is the common stock of Datatrak, headquartered in Mayfield Heights, Ohio; and,

e. Alex Tabatabai has purposefully availed himself of the privileges and benefits of Ohio insofar as he is: the principal founder and manger for TIM; chairman and CEO of Datatrak; and, has filed suit as a plaintiff in the courts of Cuyahoga County, Ohio.

3

{01674095-10}

## **BACKGROUND**

9. Tabatabai has been involved in various financial management and investment ventures since at least 2007. Tabatabai, in 2014, had a partnership interest in an entity known as Fernbank Partners, LLC, which in turn managed a hedge fund Fernbank, LLC. Collectively, these enterprises were simply known as "Fernbank."

10. Mirza had been introduced to Tabatabai through a mutual acquaintance, and was impressed by Tabatabai's approach to investing, knowledge of the securities industry, and seeming focus on protecting his investors and their interests.

11. Mirza decided, upon Tabatabai's invitation, to invest in Fernbank. Based upon Tabatabai's representations, Mirza understood that Fernbank's investment strategy was to engage in value investing: finding companies that were inexplicably undervalued by the securities markets and investing therein.

12. At some point after Mirza's investment in Fernbank, Tabatabai and his partner in Fernbank became embroiled in a dispute with one another and litigation ensued. A liquidating trustee was appointed to wind up Fernbank's business operations (the "Liquidating Trustee").

13. Mirza followed Tabatabai as he exited Fernbank and started his next venture: Arosa/TIP.

14. TIP's stated purpose was to serve as a hedge fund (just as Arosa's stated purpose had been). Its private placement memorandum descried the purpose in some detail:

> The investment objective of the Partnership is to find undervalued businesses and assets across multiple markets. Through deep fundamental analysis, the General Partner strongly emphasizes acquiring securities at bargain prices to provide a margin of safety cushion for our portfolio. The General Partner will examine all opportunities, including but not limited to debt, equity, convertible

4

issues, and other forms of claims on assets or cash flows in both public and private markets. The portfolio will be concentrated in about 5 – 25 holdings that the General Partner will understand and monitor intimately.

A copy of the private placement memorandum is attached as <u>Exhibit A</u>.

15. Mirza's initial investments in Arosa/TIP were sourced from Fernbank's assets. Once the Liquidating Trustee had gathered Fernbank's assets, paid himself, and was ready to make distributions to Fernbank investors, he transferred Mirza's portion to Arosa/TIP. Thus, Mirza's first investment in Arosa/TIP was via his IRA account. The Liquidating Trustee, using the funds taken from Fernbank, deposited $1,557.90 through December 2014. He also deposited $1,902 for Mirza's ROTH IRA, again using funds sourced from Fernbank.

16. Mirza's subsequent investments in Arosa/TIP were sourced from Tabatabai, who had taken substantial Fernbank assets and moved them to an outside account, purportedly to keep them out of the Fernbank litigation. Once the Liquidating Trustee was done with his distributions, Tabatabai transferred Mirza's funds to Arosa/TIP. Tabatabai therefore deposited an additional $85,639.63 for Mirza's IRA in January 2015, and an additional $104,594.89 for Mirza's ROTH IRA in January 2015.

17. In 2018, Tabatabai was in the midst of a difficult divorce, and he asked Mirza to buy a portion of his former wife's TIP holding. Mirza agreed and made a third investment – a non-qualified (i.e., non-IRA) investment of $50,000 made on October 25, 2018. Tabatabai indicated the purchase price was at a discount to the book value of the holding.

5

{01674095-10}

18. Mirza invested a total of $193,695.15 in qualified, tax-deferred accounts, and a total of $50,000.00 in non-qualified, non-tax-deferred accounts, for a total investment of $243,695.15 in TIP.

19. Mirza's investments in TIP were reflected in his status as a limited partner of TIP.

20. While TIP had an offering memorandum, subscription agreement, and limited partnership agreement, each of which called for signatures by both an investor and a TIP-authorized representative, Mirza does not have copies of executed offering memorandums, subscription agreements, or limited partnership agreements. Mirza, however, does have signed documents reflecting his investments in TIP and Defendants have never disputed Mirza's status as a TIP limited partner. Rather, Defendants have delivered to Mirza K-1 statements reflecting his status as a limited partner.

21. Like Mirza, JMP also invested $50,000 in TIP in 2018. That investment was to buy out another portion of Tabatabai's former wife's holding, purportedly at a discount to the book value of the holding.

22. JMP's investment in TIP was reflected in its status as a limited partner of TIP.

23. Like Mirza, JMP does not have signed executed copies of the offering memorandum, subscription agreement, or limited partnership agreement, however, Defendants have never disputed JMP's status as a TIP limited partner. Rather, Defendants have delivered to JMP K-1 statements reflecting its status as a limited partner.

{01674095-10}

**TABATABAI INVESTMENT PARTNERS' OPERATIONS**

24. While TIP advertised that it would maintain a portfolio of 5 – 25 individual securities, upon information and belief Plaintiffs allege that TIP instead concentrated the fund holdings almost exclusively in a single security: the common stock issued by Datatrak International, Inc. ("Datatrak").

25. Tabatabai serves as chairman and CEO of Datatrak, which is headquartered in Mayfield Heights, Ohio.

26. Tabatabai was personally fascinated with Datatrak. In 2015, working through his private equity fund TabaFund, Tabatabai led a proxy campaign to change leadership. Said proxy campaign also resulted in a November 2015 litigation whereby Datatrak sued Arosa (now TIP), Tabatabai, and John Doe defendants in the Cuyahoga County Court of Common Pleas, alleging tortious interference, fraudulent misrepresentation, and civil conspiracy. Arosa and Tabatabai counterclaimed, and the entire matter was settled and dismissed in December 2017.

27. In 2016, TabaFund invested $1,500,000 in Datatrak. Then, in August 2018, before Plaintiffs made their respective $50,000 investments in TIP, TabaFund invested another $8 million in Datatrak.

28. After Plaintiffs obtained a partnership interest in TIP, Tabatabai's continued infatuation with Datatrak, and his service as Chairman and CEO of that entity, drove his decision to cause TIM to cause TIP to invest heavily (and perhaps nearly exclusively) in Datatrak.

29. Datatrak's stock trades on the NASDAQ exchange.

30. TIP's Limited Partnership Agreement (the "Agreement") §6.03 calls for an annual year-end audit. A copy of the Agreement is attached as <u>Exhibit B</u>.

7

{01674095-10}

31. Despite this requirement, upon information and belief, Plaintiffs allege TIP was never the subjected to any internal or external audits, much less annual audits, after the end of the first quarter of 2015.

32. TIM caused TIP to issue annual K-1 statements to Plaintiffs. Said K-1 statements were erroneous and did not reflect the proper valuations of Plaintiffs' stakes in TIP. For example, one year's K-1 statement's report of the ending value for a Plaintiff's holding did not match the beginning value of the following year's K-1 statement. Nor did any particular K-1 statement's allocation of income and expenses make sense to a trained eye. The questionable accuracy of the K-1 statements is further evidenced by the fact that the increase or decrease in values for Mirza and JMP are different on a percentage basis. For example, the 2020 K-1 statements show a 43% drop in the value of Mirza's IRA partnership interest, and a 11% drop in the value of JMP's partnership interest. Were the K-1 statements to be accurate, one would expect the same percentage gain or drop for two different limited partners for the same year.

33. On multiple occasions, Mirza asked Defendants to explain the K-1 statements' discrepancies, but he never received an explanation.

34. On information and belief, Plaintiffs allege that Tabatabai caused TIP to take $700,000 of TIP assets and pay those funds to Tabatabai's former wife in order to satisfy his personal obligations to her. Plaintiffs are unaware of any value TIP received for said payment.

## COUNT ONE

## BREACH OF CONTRACT – TIP

35. Plaintiffs adopt by reference the contents of paragraphs 1 – 34 above as if fully re-stated herein.

{01674095-10}

36. The Agreement contained terms governing a limited partner's ability to withdraw their investment from the partnership.

37. Section 6.01 of the Agreement stated, in pertinent part:

> Except as otherwise set forth in this Article 6 and subject to the notice requirement described below, each Limited Partner may withdraw the whole or any part (subject to the limitations described in Sections 6.01(b) and 6.01(c)) of the amount in his Capital Account as of the calendar year ending on or immediately after the last day of the 360 day period following the date other relevant Capital Account was established . . ..

38. Mirza made a request to withdraw the entirety of his non-IRA investment on September 27, 2020, and the entirety of his IRA investments on September 28, 2020, which requests were made more than one year following the date his Capital Account was established. Copies of the requests are attached as <u>Exhibits C</u> and <u>D</u>.

39. Mirza's withdrawal requests were sent by email to Tabatabai on or about September 28, 2020, and Tabatabai acknowledged receipt thereof.

40. JMP made a request to withdraw the entirety of its investment on September 17, 2021, which request was made more than one year following the date its Capital Account was established. A copy of the request is attached as <u>Exhibit E</u> and was sent to Tabatabai in September 2021.

41. Section 6.03 of the Agreement stated, in pertinent part:

> Unless otherwise agreed by the General Partner, payment shall be made to a Limited Partner withdrawing all or part of his Capital Account within thirty (30) days following the effective date of the withdrawal (less any withholding for reserves, the Management Fee, and Performance Allocation, if any), provided, however, that if a Limited Partner elects to withdraw 90% or more of the aggregate value of his Capital Account, 90% of such value . . . generally, will be distributed within thirty (30) days after the effective date of such withdrawal and the balance not later than thirty (30) days after completion of the Partnership's year-end audit . . ..

42. No payment was made to Mirza within 30 days of his withdrawal request.

43. Section 8.01 of the Agreement established that TIP's fiscal year would coincide with the calendar year.

44. Relevant to Mirza's withdrawal request, TIP's year ended on December 31, 2020, and the annual audit should have been completed shortly thereafter. While Mirza is unaware of whether any sort of year-end audit was performed, no holdback was paid to Mirza at any point in time.

45. Mirza attempted to contact Tabatabai regarding the withdrawal request processing and repayment of Mirza's investment. Tabatabai refused to answer Mirza's questions with any specificity, and no payment was made

46. No payment was made to JMP within 30 days of its withdrawal request.

47. Relevant to JMP's withdrawal request, TIP's year ended on December 21, 2021, and the annual audit should have been completed shortly thereafter. While JMP is unaware of whether any sort of year-end audit was performed, no holdback was paid to JMP at any point in time.

48. After Mirza and JMP confronted Tabatabai with his fund's failure to return the investment sums due, Tabatabai responded to each, demanding they sign a release of all claims in exchange for a payment of what appeared to be an incorrect sum.

49. On or about June 15, 2021, after Mirza had contacted Tabatabai two or three times to inquire regarding the status of the withdrawal requests, Tabatabai responded with three documents, each titled "Membership Interest Power, Redemption, Receipt, And Release"

    a. The first, for the non-IRA account, identified a value of $27,251

    b. The second, for the IRA account, identified a value of $38,564

    c. The third, for the Roth IRA account, identified a value of $24,809.

50. Some time after JMP made its withdrawal request, Tabatabai delivered to JMP a document titled "Membership Interest Power, Redemption, Receipt and Release." Where the releases provided to Mirza contained valuations of each account, the release provided to JMP contained *no* stated value. Thus, TIP, TIM, and Tabatabai asked JMP to release them in exchange for an unknown sum.

51. Accompanying the releases Tabatabai sent to Mirza were what were titled "Final Limited Partner Account Statements," each of which purported to validate the payment sums set forth in the releases. No detail was provided therein save for a line item identifying the beginning capital account balance and what was called a "decrease in partners' capital derived from operations."

52. No explanation or detail was provided on the final account statements concerning the decrease. Nor was there any explanation regarding how the Fund's underlying investments were allocated or how those individual holdings had performed.

53. If, in fact, TIP is heavily invested in Datatrak as Plaintiffs suspect it is, there should be a gain in the value of Plaintiffs' TIP limited partnership shares. When Plaintiffs made their last TIP investments in October 2018, Datatrak stock was trading around $4/share. When Mirza made his withdrawal request in September 2020, Datatrak was trading between $5 and $6 per share. When JMP made its withdrawal request in September 2021, Datatrak stock was trading in excess of $14/share. Even as this Complaint is being drafted in early March, 2022, the stock is trading at nearly $6/share.

54. On July 1, 2021, Mirza asked Tabatabai to identify the third-party accountant who performed the 2018 and 2019 audits, and asked him to confirm that the

{01674095-10}

Fund had actually lost 72.7% of its value from 2015 Q1, lost 45.5% of its value since November 1, 2018, and lost 19.7% of its value in 2020. Tabatabai did not respond.

55. Both Mirza and JMP refused to sign the releases because:

a. They were entitled, per the Agreement, to the return of funds without any sort of release; and,

b. There were serious questions regarding the Fund's accounting practices and its calculation of the current values of their accounts.

56. TIP's failure to conduct annual accountings serves as a breach of the Agreement.

57. TIP's refusal to return Mirza's and Patel's investments serves as a breach of the Agreement.

## COUNT TWO

## **CONVERSION - TIP**

58. Plaintiffs adopt the contents of paragraphs 1 through 57 above as if fully re-stated herein.

59. Plaintiffs have each made demand upon TIP for the return of their investments.

60. TIP has failed and refused to return the funds that rightfully belong to Plaintiffs.

61. Mirza has suffered damages as a result of TIP's refusal to return his investment, in a sum no less than $243,695.15. The actual amount of Mirza's damages cannot be calculated until a full accounting of TIP's finances is completed.

62. JMP has suffered damages as a result of TIP's refusal to return its investment, in a sum no less than $50,000. The actual amount of JMP's damages cannot be calculated until a full accounting of TIP's finances is completed.

63. TIP's refusal to return Plaintiff's funds constitutes wrongful dominion over Plaintiffs' property and constitutes conversion.

## COUNT THREE

## **BREACH OF FIDUCIARY DUTY – TIM AND TABATABAI**

64. Plaintiffs adopt the contents of paragraphs 1 through 63 above as if fully re-stated herein.

65. Defendant TIM, as TIP's general partner, had a fiduciary duty to ensure that:

    a. TIP used the investors' funds in a manner consistent with the Operating Agreement and other operative governing documents;

    b. TIP abided by the Agreement's strictures;

    c. An annual audit was performed pursuant to the Agreement's terms.

66. Defendant TIM, as TIP's general partner, failed to conduct the requisite annual audit, or cause the requisite annual audit to be performed.

67. As a result of Defendant TIM's failure to ensure an annual audit was performed, Plaintiffs are unable to determine whether their investments were used properly by TIP, and what the current values of their investments are.

68. Defendant TIM's insistence that Plaintiffs sign a release in order to receive funds they were properly due under the Limited Partnership Agreement was, itself, a breach of its fiduciary duty.

69. Moreover, if in fact TIM caused TIP to invest exclusively or primarily in Datatrak, not only is that a breach of the Operating Agreement, but it is a breach of its fiduciary duty to ensure that TIP abided by its stated investment strategy of investing in between 5 and 25 individual holdings.

70. Mirza has suffered damages in a sum no less than $243,695.15 as a result of TIM's breach of its fiduciary duties. The actual amount of Mirza's damages cannot be calculated until a full accounting of TIP's finances is completed.

71. JMP has suffered damages in a sum no less than $50,000 as a result of TIM's breach of its fiduciary duties. The actual amount of JMP's damages cannot be calculated until a full accounting of TIP's finances is completed.

## COUNT FOUR

## ACCOUNTING - TIP

72. Plaintiffs adopt the contents of Paragraphs 1 through 71 above as if fully re-written herein.

73. TIP's and TIM's refusal to conduct annual audits, combined with the conflicting information provided in annual K-1s provided to Plaintiffs leads to the well-founded suspicion that TIP, TIM, and Tabatabai have misused funds entrusted to TIP.

74. Plaintiffs demand access to the true and full information regarding the status of TIP and its financial condition, an accounting of TIP's finances from December 2014 to the present, and that the accounting be used as a foundation for the proper valuation of Plaintiffs' limited partnership shares.

## COUNT FIVE

## PIERCING THE VEIL - TABATABAI

75. Plaintiffs adopt the contents of paragraphs 1 through 74 above as if fully re-written herein.

76. Upon information and belief, Tabatabai used TIP's resources and assets to pay his personal liabilities due to his former wife.

77. To raise money to pay sums due his former wife, Tabatabai convinced Plaintiffs to each purchase $50,000 shares of TIP, which he represented as a portion of his former wife's stake in the enterprise, being sold at a discount.

78. Upon information and belief, Plaintiffs allege that Tabatabai used the $100,000 invested by Plaintiffs in 2018, along with another approximately $600,000 of TIP's assets, and delivered those assets to Tabatabai's former wife.

79. Upon information and belief, Plaintiffs contend that TIP received no value for the sums paid to Tabatabai's former wife.

80. Tabatabai ignored the corporate form in using TIP as an alter ego to pay his outstanding personal debts.

81. Plaintiffs are entitled to recover from Tabatabai directly sums due them from TIP, thanks to his refusal to abide by the corporate form and his use of TIP as his alter-ego to pay his personal debts.

## COUNT SIX

## **LOAN CLAIM – BREACH OF CONTRACT - TABATABAI**

82. Plaintiff Mirza adopts the contents of paragraphs 1 through 7 above as if fully re-stated herein.

83. Plaintiff Mirza maintained a personal friendship with Tabatabai.

84. Tabatabai was deeply involved in divorce proceedings in 2019.

85. Tabatabai, during the course of his divorce, complained to Mirza that he was short of money and asked Mirza to loan him funds.

86. Mirza loaned Tabatabai the sum of $47,000 on or about July 8, 2019.

{01674095-10}

87. There was no formal loan documentation reflecting the terms of the loan. Rather, the nature of the loan was described in a series of text messages between Plaintiff Mirza and Tabatabai.

88. Tabatabai made several payments on the loan: $2,501 on September 23, 2001; $5,000 on October 29, 2019; and, $5,000 on December 2, 2019. Without regard to interest due and owing, the principal sum remaining due is $34,499.00.

89. Interest due on the remaining sum should be calculated at the statutory judgment rate until paid in full. Plaintiff Mirza, as a California resident, is entitled to apply California Code of Civil Procedure §685.010 to use a 10% judgment interest rate.

## PRAYER FOR RELEIF

Wherefore, Plaintiffs Mirza and JMP pray that this Court award them:

1. Upon Count One, judgment against TIP in an amount to be calculated once a full accounting is performed and Plaintiffs' limited partnership shares are properly valued, but which sums are believed to be greater than $243,695.15 for Mirza and $50,000 for JMP;

2. Upon Count Two, judgment against TIP in an amount to be calculated once a full accounting is performed and Plaintiffs' limited partnership shares are properly valued, but which sums are believed to be greater than $243,695.15 for Mirza and $50,000 for JMP;

3. Upon Count Three, judgment against TIM and Tabatabai in an amount to be calculated once a full accounting is performed and Plaintiffs' limited partnership shares are properly valued, but which sums are believed to be greater than $243,695.15 for Mirza and $50,000 for JMP;

{01674095-10}

4. Upon Count Four, an order from this Court requiring that TIM and TIP grant Plaintiffs access to true and full information regarding the status and financial condition of TIP, true and full information regarding the amount of cash and a description of the value of any other assets owned by TIP, and a full accounting of TIP's finances;

5. Upon Count Five, judgment in favor of Mirza and JMP against Tabatabai in a sum to be calculated once a full accounting of TIP's finances is performed and Plaintiffs' limited partnership shares are properly valued, but which sums are believed to be greater than $243,695.15 for Mirza and $50,000 for JMP;

6. Upon Count Six, judgment in favor of Mirza against Tabatabai in the amount of $34,499.00, plus interest at the rate of 10% per annum;

7. Court costs, attorney's fees, and such other relief as this Court may find just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury, with the maximum number of jurors allowed by law, as to all issues so triable.

Dated:  April 4, 2022                             Respectfully submitted,

*/s/ Hugh D. Berkson*
Hugh D. Berkson (#0063977)
hdb@mccarthylebit.com
McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., L.P.A.
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
(216) 696-1422
(216) 696-1210 (facsimile)

*Attorney for Plaintiffs*

18

{01674095-10}